KMD:jmr  8202  \QuincyMutualComplaint-Complaint-3-1-21

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DENNIS CURCI | : |
| | : |
| VS. | :   C.A. NO. |
| | :   **The Plaintiff, Dennis Curci, demands a** |
| | :   **trial by jury on all counts.** |
| | : |
| QUINCY MUTUAL FIRE INSURANCE | : |
| COMPANY, Alias | : |

### I.  THE PARTIES

1. The Plaintiff, Dennis Curci (hereinafter "Mr. Curci") is a natural person who resides in the Town of South Kingstown, County of Washington, State of Rhode Island.

2. The Defendant, Quincy Mutual Fire Insurance Company, Alias (hereinafter "Quincy Mutual") is an entity incorporated in the Commonwealth of Massachusetts with its principal place of business in the City of Quincy, County of Suffolk, Commonwealth of Massachusetts.  At all materials hereto, Quincy Mutual was in the business of the provision of personal and commercial auto insurance and was licensed to do so in the State of Rhode Island.

### II.  JURISDICTION

3. This Honorable Court maintains jurisdiction over this case pursuant to 28 U.S.C. §1332 as the Plaintiff, Dennis Curci, and the Defendant, Quincy Mutual Fire Insurance Company, are citizens of different states and the amount in controversy exceeds the sum of $75,000.

### III.  THE FACTS

4. On or about December 17, 2015, Mr. Curci was operating a 2013 Ford F150 pickup truck bearing VIN # 1FTFW1EF3DFA41298 (hereinafter the "Pickup Truck") in a

northerly direction on Tower Hill Road in the Town of North Kingstown, County of Washington, State of Rhode Island. The Pickup Truck in question was owned by Mr. Curci's construction business, D.A. Curci Builders, LLC and as such, was being operated by Mr. Curci with the express authority of its owner.

5. Mr. Curci brought the Pickup Truck to a stop at a traffic light which was red. While stopped, a second vehicle operated by David Pereira (hereinafter "Mr. Pereira") forcefully collided with the rear of the Pickup Truck operated by Mr. Curci. The impact generated so much force that it bent and disfigured the steel frame of the Pickup Truck.

6. At all times material hereto, Mr. Curci was in the exercise of due care.

7. As a result of the collision, Mr. Curci sustained grievous and permanent bodily injury for which he incurred medical expenses. In addition, Mr. Curci (who was a licensed general contractor) was rendered unable to work in this capacity on a permanent basis and as a result, has suffered a substantial loss of earnings and future earning capacity in the minimum amount of *$929,839.75* and as much as *$5,200,314.38* as a result of his injuries.

8. At the time of the accident, Mr. Pereira, was insured under a personal automobile insurance policy issued by Met Life Auto and Home (hereinafter "Met Life") with liability limits in the amount of *$250,000 per person/$500,000 per accident*.

9. In addition, at the time of the accident, D.A. Curci Builders, LLC was insured under a Commercial Automobile Policy bearing policy number ACV 000530 issued Quincy Mutual (hereinafter the "Quincy Mutual Policy") and which listed the Ford Pickup Truck as a "Covered Auto". A copy of the Quincy Mutual Policy is attached hereto as Exhibit 1.

10. The Quincy Mutual Policy included Uninsured Motorist Coverage which provided coverage to an "Insured" for compensatory damages resulting from bodily injury

caused by an owner or operator of an "Uninsured Motorist Vehicle" (which was defined in the policy as any "land motor vehicle for which the sum of all liability bonds or policies at the time of an accident does not provide at least the amount an insured is legally entitled to recover as damages").

11. In addition, the Quincy Mutual Policy also defined an "Insured" under the Uninsured Motorist Coverage as anyone "occupying a Covered Auto".

12. Mr. Curci was occupying a "Covered Auto" as defined under the Quincy Mutual Policy at the time of the accident. As such, he is an "Insured" of Quincy Mutual under the Uninsured Motorist Coverage provided under the Quincy Mutual Policy.

13. In addition, the amount of damages that Mr. Curci is legally entitled to recover as compensatory damages from Mr. Pereira is in excess of the amount of liability coverage available under the Met Life policy. As such, Mr. Curci is entitled to coverage under the Uninsured Motorist Coverage of the Quincy Mutual Policy.

14. On or about April 9, 2019, Mr. Curci made a bonafide demand for the policy limits available under Mr. Pereira's liability insurance policy with Met Life in the amount of ***$250,000.00.***

15. Thereafter Met Life, on behalf of their insured, Mr. Pereira, indicated that they would tender their policy limits in the amount of ***$250,000.00.***

16. On or about May 29, 2019, Mr. Curci requested and received written permission from Quincy Mutual to accept the policy limits from Met Life and to sign a release of Mr. Pereira in exchange for the same.

17. In accordance with the express permission granted by Quincy Mutual as detailed in paragraph 16, Mr. Curci signed a release of Mr. Pereira on or about May 24, 2019 and Met Life tendered the liability policy limits in the amount *$250,000.00.*

18. On or about June 5, 2019, Mr. Curci made a written settlement demand to Quincy Mutual for the policy limits of *$1,000,000.00* available under the Uninsured Motorist Coverage of the Quincy Mutual Policy. The demand in question provided a detailed analysis of Mr. Curci's injuries, the medical expenses that he incurred, the fact that the injuries were permanent, the fact that the injuries permanently disabled Mr. Curci from working as a general contractor and that as a result, Mr. Curci incurred a loss of earnings and future loss of earning capacity in the minimum amount of *$929,839.75* and as much as *$5,200,314.38.* The demand package also included supporting documentation of these damages including, but not limited to, all of Mr. Curci's medical records and bills, the report from his orthopedic surgeon attesting to the permanency of his injury and the fact that it permanently disabled him from working as a general contractor, and a detailed analysis from his accountant of his pecuniary losses occasioned as a result of his disability.

19. Following submission of this demand package, a claims adjuster from Quincy Mutual, Ms. Peggy Shea (hereinafter the "Quincy Mutual Claims Adjuster"), contacted counsel for Mr. Curci and indicated that Quincy Mutual did not believe that Mr. Curci's injuries exceeded the amount collected from Met Life and as a result, it was Quincy Mutual's position that he was not entitled to coverage under the Uninsured Motorist Coverage of the Quincy Mutual policy. Upon information and belief, at the time Quincy Mutual took this position, neither the Quincy Mutual Claims Adjuster nor any other agent, servant, or employee of Quincy Mutual had performed *any* investigation of the claim, nor submitted any such investigation to a

cognitive evaluation and review to determine whether there was any lawful basis to take the position they did.

20.     The Quincy Mutual Policy contains a provision which indicates that if Quincy Mutual and an insured disagree with whether the insured is legally entitled to recover damages from the owner or driver of an uninsured motor vehicle, or do not agree as to the amount of damages that are recoverable by that insured, then the matter may be arbitrated.  As such, on or about August 9, 2019, Mr. Curci's counsel made a bonafide written demand for arbitration under the policy and designated Attorney Christopher Russo as his arbitrator.  The demand for arbitration also requested that Quincy Mutual identify their arbitrator so that the two (2) arbitrators could select a neutral arbitrator,  pursuant to the terms and conditions of the Quincy Mutual Policy.

21.     Thereafter, Quincy Mutual retained counsel, and through said counsel, ***then*** commenced their investigation of this claim by requesting various documents, requesting the opportunity to conduct an examination under oath of Mr. Curci, retaining an orthopedic surgeon to assess Mr. Curci's injuries and retaining a forensic accountant to assess Mr. Curci's claims for pecuniary loss.  Notably, this investigation was commenced ***after*** Quincy Mutual took the position that Mr. Curci's damages did not exceed the amount he collected from Mr. Periera's liability insurance carrier, Met Life and thus was not entitled to Uninsured Motorist Coverage under the Quincy Mutual Policy.

22.     By the end of January 2021, the activities detailed in paragraph 20 were substantially complete. As such, on or about February 3, 2021, counsel for Mr. Curci requested that Quincy Mutual notify him by February 20, 2021 whether they would agree to adjudicate the claim through arbitration pursuant to the terms and conditions of the Uninsured Motorist

Coverage contained within the Quincy Mutual Policy (as requested some 18 months earlier on August 9, 2019).

23. On or about February 18, 2021, counsel for Quincy Mutual requested an extension until February 26, 2021 to respond to Mr. Curci's counsels letter dated February 3, 2021. In the correspondence, Mr. Curci's counsel was assured that Quincy Mutual would inform him whether they would be willing to proceed with arbitration as originally requested on August 9, 2021 (or in the alternative, how they proposed resolving and/or adjudicating their insureds claim) no later than that date.

24. On February 19, 2021, counsel for Mr. Curci agreed to the requested extension until February 26, 2021.

25. Quincy Mutual failed to respond to Mr. Curci's request to adjudicate the claim through arbitration as promised.

26. Mr. Curci at all times has fully complied with all terms and conditions of the Quincy Mutual Policy.

## COUNT I
### Dennis Curci v. Quincy Mutual Fire Insurance Company
*Breach of Contract*

27. The Plaintiff, Dennis Curci, repeats and realleges the allegations contained in paragraphs 1 through 25 as if fully set forth herein.

28. The Defendant, Quincy Mutual Fire Insurance Company has a contractual obligation to provide the Plaintiff, Dennis Curci with coverage under the Uninsured Motorist Coverage of the Quincy Mutual policy as detailed previously herein.

29. The Defendant, Quincy Mutual Fire Insurance Company, has breached its contractual obligation to pay the Plaintiff, Dennis Curci under the Uninsured Motorist Coverage of the Quincy Mutual Policy.

30. As a direct and proximate result of the Defendant, Quincy Mutual Fire Insurance Company's breach of contract, the Plaintiff, Dennis Curci, has sustained damages.

WHEREFORE, the Plaintiff, Dennis Curci, prays this Honorable Court to enter judgment in his favor and against the Defendant, Quincy Mutual Fire Insurance Company, in an amount deemed just and equitable, together with interest, costs, and attorney's fees.

## COUNT II
### Dennis Curci v. Quincy Mutual Fire Insurance Company
*Violation of R.I.G.L.§9-1-33*
*Bad Faith*

31. The Plaintiff, Dennis Curci, repeats and realleges the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

32. The Defendant, Quincy Mutual Fire Insurance Company, owed a duty to its insured, Dennis Curci, to deal with him in the utmost good faith and act in his best interest as their insured (and not its own pecuniary interest). *See Skaling v. Aetna Insurance Company, 799 A.2d 997 (R.I. 2002).* This duty includes, but is not limited to:

(a) Performing a full and complete investigation of Mr. Curci's claim and submitting such investigation to a cognitive evaluation and review ***before*** making a decision as to whether Mr. Curci is entitled to benefits under the policy, and is so, in what amount (and cannot satisfy this duty by relying on information acquired ***after*** making said decision to justify the same).*See R.I.G.L. § 27-9.1-4 (a) (6); See also Skaling v. Aetna Insurance Company, 799 A.2d 997 (R.I. 2002);*

(b) Effectuating prompt, fair and equitable settlement of the claim submitted by Dennis Curci, to relieve him of the burden and expense of litigation (particularly when liability is clear); *See R.I.G.L. § 27-9.1-4 (a) (4); See also Skaling v. Aetna Insurance Company, 799 A.2d 997 (R.I. 2002)*;

(c) Performing its obligations under the contract of insurance in a timely manner (including but not limited to acknowledging and acting with reasonable promptness upon pertinent communications with respect to claims arising under its policies); *See R.I.G.L. §27-9.1-4 (a) (3);  See also Skaling v. Aetna Insurance Company, 799 A.2d 997 (R.I. 2002)*.

33.     The Defendant, Quincy Mutual Fire Insurance Company violated its obligation to deal with its insured, Mr. Curci, in good faith and in fact, has committed several acts of bad faith throughout its handling of the claim.  This includes, but is not limited to:

(a) Failing to perform any investigation and failing to submit such investigation to a cognitive evaluation and review ***before*** deciding that Mr. Curci's damages did not exceed the amount collected from the liability insurer, Met Life as detailed in paragraphs 19 and 21;

(b) Failing effectuate prompt, fair and equitable settlement of the claim submitted by Mr. Curci (particularly when liability is clear); and

(c) Failing to respond to Mr. Curci's written request that the claim be adjudicated through an arbitration proceeding pursuant to the terms and conditions of the Quincy Mutual Policy as detailed in paragraphs 20, 22-25  of this complaint.

34.     The Defendant, Quincy Mutual Fire Insurance Company's actions violate *R.I.G.L. §9-1-33*.

35. As a direct and proximate result of the Defendant, Quincy Mutual Fire Insurance Company's acts of bad faith, the Plaintiff, Dennis Curci, has been damaged.

WHEREFORE, the Plaintiff, Dennis Curci, prays this Honorable Court to enter judgment in his favor and against the Defendant, Quincy Mutual Fire Insurance Company, for the following:

A. Compensatory damages pursuant to *R.I.G.L. § 9-1-33;*

B. Punitive damages pursuant to *R.I.G.L. §  9-1-33;*

C. Interest pursuant to *R.I.G.L. §9-1-33;*

D. Attorney's fees pursuant to *R.I.G.L. § 9-1-33*;

E. Such other and further relief as this Honorable Court deems just and equitable.

> Plaintiff,
> Dennis Curci
> By his Attorney,
>
> */s/ Kevin M. Daley*
>
> _____
> Kevin M. Daley, Esq. (#4944)
> DALEY ORTON, LLC
> 1383 Warwick Avenue
> Warwick, RI 02888
> PHONE:  (401) 921-5901
> FAX:  (401)  921-5901
> kdaley@daleyorton.com

Dated: March 3, 2021